FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
2024 JUN 20 AM 12: 25
OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT
DISTRICT COURT OF NEBRASKA

| | |
|---|---|
| JAMES MAYNARD, PETITIONER, | CASE NO.: 8:18-CR-215 |
| V. | JUDGE: JOHN M. GERRARD |
| UNITED STATES OF AMERICA, RESPONDANT. / | MOTION FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C §3582(C)(1)(A) |

MOTION FOR REDUCTION IN SENTENCE UNDER 18 U.S.C. §3582(C)(1)(A)

AMENDMENT 821 PART C§4A1.3, METH MIXTURE VARIANCE

NOW, COMES Petitioner James Maynard a Pro Se Litigant, humbly presenting himself before this Court with the intentions on requesting an audience to be heard and considered for compassionate release from an:
"OVERSTATED CRIMINAL HISTORY", and "NO LONGER APPLICABLE METH PURITY GUIDELINE SCORE".

I. INTRODUCTION:

Petitioner James Maynard, in the above - captioned case, respectfully moves this Honorable Court to consider his Motion for Compassionate Release pursuant to 18 U.S.C § 3582(c)(1)(A)(i). In light of the Petitioner's sincere self-assessment, his crucial need for graduated reintergration into society, and his goal of ensuring the request marks his final interaction with the penal system, the Petitioner puts forth the following proposals for the Court's consideration.

II. REQUEST FOR RESENTENCING:

Resentencing to a sentence under the guidelines applicable under the mix meth guidelines. According to the legal landscape being observed in the Circuit Case United States V. Harry. The Circuit has determined that cases that involve a drug amount that has not been tested for it's purity can no longer be calculated as though it tested at a 80% purity or higher making it pure meth. The untested meth must be considered to be the equivalent of mixed meth with the accompanying guideline range.

RECEIVED
JUN 20 2024
CLERK
U.S. DISTRICT COURT

(1)

2. Resentence Petitioner to a sentence with a properly scored Criminal History Score that no longer overstates 4 Criminal history Points in the Pre-Sentence Report for "Simple Possession", of Marijuana, and "Marijuana Paraphernalia". These events amounted to 4 points in the Criminal History Category which effectively moved Plaintiff from category 3 to 5, changing the underlying sentence by 111 months. If I was sentenced today in light of Amendment #821, Part C which amends the U.S.S.G §4A1.3 Commentary to include prior marijuana possession sentences as an example of when a downward departure may be warranted for criminal history reasons. This would be a vehicle by which the Court could reconsider the sentence that was previously imposed.

3. Resentencing due to the overstated Criminal History Points for the Non-Jailable offenses that in light of the Amended by the United States Sentencing Guidelines changes to section 4A1.3.

## III. PERSONAL GROWTH AND REHABILITATION:

The Petitioner has demonstrated a high level of resilience and willingness to battle against the stuggles of addiction. Though the Petitioner has had several institutional misconduct reports the Petitioner has since successfully completed "Drug Ed.", Petitioner currently enrolled in Non-Residential RDAP, as well as being on the waiting list for trauma. Petitioner is also continually seeking to be approved for the MAT Program, though I have been repeatedly denied due to both programs being based off of a inmates release date. Having spent many of his formative years within the confines of the penal system, the Petitioner recognizes the enormity of the challenges he faces upon re-entry into society. Consequently, the Petitioner is making these requests not out of asense of entitlement, but from a position of humility and a heartfelt desire to reintergrate as a productive and respectable member of the community.

## EXTRAORDINARY AND COMPELLING REASONS:

Under 28 U.S.C §994(t), the United States Sentencing Commission "shall

(2)

describe what should be considered extraordinary and compelling reasons for sentence reduction, including the for sentence reduction, including the criteria to be applied and a list of specific examples." The Commission has stated in it's new Amendment USSG §4A1.3 Criminal History Inadequacy, that USSG Manual 1B1.13 Reduction of term of imprisonment under 18 U.S.C. §3582(c)(1)(A)(i)(Compassionate Release). The Amendment describes new "Extraordinary and Compelling Reasons", that might warrant a reduction in sentence. In addition to the existing medical, geriatric, and family circumstances for reasons the commission has now added these additional reasons:

+ INADEQUATE MEDICAL CARE:
+ PANDEMIC HEALTH:
+ FAMILY CIRCUMSTANCES:
+ SEXUAL AND PHYSICAL ABUSE:
+ OTHER REASONS:
+ UNUSUALLY LONG SENTENCE:

APPLICABLE LAW:

"'[A] judgement of conviction that includes [a sentence of imprisonment] constitutes a final judgement and may not be modified by District Court except in limited circumstances." United States v. Dillion, 560 U.S. 817, 824, 130 S. CT. 2638, 177 L. Ed. 2d 271 (2010)(qouting 18 U.S.C 3582). See also United States v. McCoy, 981 F.3d 271, (4th Cir. 2020). One of these circumstances, compassionate release pursuant to 18 U.S.C 3582 permits Courts to reduce the term of imprisonment after making a 'three step inquiry' (1) has defendant exhausted all administrative remedies: (2) does an extraordinary and compelling reason for a sentence reduction exist: and (3) is a sentencereduction consistent with all relevant sentencing factors listed in 3553(a)?

IV. DISCUSSION:

In 2020 the parties involved agreed after presentment of a satisfactory Plea Agreement entered into between the government and the then Defendant resulting in a 11(c)(1)(c).

(3)

During the time that has elaspsed the legal landscape, public perception and the Petitioner's age, maturity, family circumstances, and many other things including technology and Petitioner's skill set and development having changed. The Petitioner came to Federal Prison almost six years ago exactly. During his pretrail stage there were motions for consideration of the purity of the drugs, to determine weather the drugs attributed to him as ghost dope should be counted as mixed meth as oppose to actual meth.

Today the 8th Circuit has ruled in accordance with the United States v. Harry 313 F. Supp. 3d 969, 974(N.D. Iowa 2018), the following: That the 10-to-1 ratio treating 1 gram of methamphetamine (actual) as the equivalent of 10 grams of methamphetamine mixture, see §2D1.1(c)(1)-¶12), generally results in sentencing calculations inconsistent with §3553(a). An impressive and growing number of courts have concluded that it does. That holding is premised on four primary grounds:

The 10-to-1 actual-to-mixture ratio isn't grounded in any empirical evidence generated by the Sentencing commission,

methamphetamine purity is no longer a useful proxy-if, indeed, it ever was- for the relative culpibility of a defendant,

the 10-to-1 ratio creates unwarranted sentencing disparities among defendants convicted of methamphetamine crimes, and

the multiplier applied to defendants convicted of crimes involving methamphetamine (actual) creates unwarranted sentencing disparities between those defendants and those convicted of other drug crimes. First, it's well-established that the drug trafficking guidelines don't reflect the Sentencing Commission's exercise of its institutional role and collection of empirical data-rather, the commission chose to anchor the drug trafficking guidelines to the mandatory minimum sentences that Congress established for drug offenses. Gall, 552 U.S. at 46 n.2; see Kimbrough, 552 U.S. at 96-97. The 10-to-1 ratio seems to be grounded in nothing more than the presence of the same ratio in the Anti-Drug-Abuse-Act of 1988.

Second, the apparent retionale for imposing additional punishment based on drug purity is that [t]he purity of the controlled substance...is probative of the defendant's role or position in the chain of distribution. Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs. As large quantities are normally associated with high purities, this factor is particularly relevant where smaller quantities are involved. §2D1.1 cnt. n27(C); see Robinson, 2022 U.S. Dist. LEXIS 231041, 2022 WL 17904534, at *1; Carrillo, 440 F. Supp. 3d at 1154; Johnson, 379 F. Supp. 3d at 1223; Bean, 371 F. Supp. 3d at 52; Ibarra-sandoval, 265 F. Supp. 3d at 1256; see also Nawanna, 321 f. Supp. 3d at 951; cf. United States v. Trejo, 624 F. App'x 709, 714 (11th Cir. 2015).

Perhaps that was true of methamphetamine at some point, when the paradigmatic methamphetamine conspiracy involved people diligently harvesting pseudoephedrine to cook in a secluded trailer. But it's not true in a world in which most of the methamphetamine that this Court now sees which was produced on an industrial scaler and smuggled into the United States. The fact is-and there doesn't appear to be much disagreement on this point-that nearly all of the methamphetamine that's actually tested in relation to federal drug crimes is highly pure. That fact    is supported by both empirical data and the anecdotal experience of every federal district judge to opine on the question-even those who disagree about whether varying from the guidelines is warranted. See Van Long, 2003 U.S. Dist. LEXIS 18597; Robinson, 2022 U.S. Dist. LEXIS 231041, 2022WL 17904534, at *3; Carrillo, 440 F. Supp. 3d at 1154; Moreno, 583 F. Supp. 3d at 743-44; Kaufman, 2019 U.S. Dist. LEXIS 118725, 2019 WL 3220571, at *2; Johnson, 379 F. Supp. 3d at 1224-25; Rodriguez; 382 F. Supp. 3d at 896; Bean, 371 F. Supp. 3d at 52-53; Pereda, 2019 U.S. Dist. LEXIS 19183, 2019 WL 463027, at *4; Ferguson, 2018 U.S. Dist. LEXIS 129802, 2018 WL 3682509, at *4; Nawanna, 321 F. Supp. 3d at 951; Ibarra-Sandoval, 265 F. Supp. 3d at 1255-56.

In other words, the ready availibility of methamphetamine (actual) to everyone in the chain of distribution, from the kingpin to the mule to the end user, has utterly severed any connection between the purity of the drug

(5)

and the defendant's position in the criminal enterprise-and as a result, contrary to §3553(a), the guideline is all of them like kingpins.

But that doesn't mean everyone is being treated alike. Instead, differing outcome are driven by whether or not methamphetamine is tested for purity in the first place. This should exclude all methamphetamine not tested at all such as 'Ghost Dope', and 'Large quantities wherein only the smallest portion of the Drugs was actually Tested'. And as a multitude of courts have again observed, whether or not testing occurs for some or all of the methamphetamine for which a defendant is being held responsible is largely dependent on arbitrary conditions that have no bearing on the §3553(a) factors which should be driving sentencing decisions.

The Pereda court, for instance, noted that testing decisions could hinge on whether some or all of the drugs were seized, how busy testing labs are, the speed of a defendant's guilty plea relative to the ability of testing, and whether the prosecution began with a federal investigation or a state agency that didn't complete the testing in a timely manner. 2019 U.S. Dist. LEXIS 19183, 2019 WL 463027, at *5. And that may have been the experience of this Court as well. Most of those factors are beyond a defendant's control, and none of them should result in additional months or years of imprisonment.

These factors amount to the disparity that would exist between the sentence the Petitioner is currently serving today and the one the Petitioner would be sentenced to today under the new legal landscape as well as the many things that have changed in the Petitioner's personal and circumstantial life.

Back during the early days of the initial sentencing the honorable Judge in this matter did not have at the Court's disposal the information and viewpoint present today. The possibility of a variance with a recalculation of the guidelines range based on both the Amendments to the counting of prior marijuana simple possession charges from the state under U.S.S.G Manual 4A1.3 could now be taken into consideration as well as the guideline that would apply under the methamphetamine mixture-including, the fact that no actual drugs are a factor in this individualized case.

The Court is being asked to consider all of the 3553(a) sentencing factors when reviewing this motion for reduction in sentence under Amendment 821 Section 4A1.3.

## V. CONCLUSION:

Now, in light of the newly amended guidelines interpretation of criminal history calculation and the overstating of minor 'offense' involving 'marijuana and marijuana paraphernalia', Petitioner is currently serving a sentence that is outside of the current Congressional intent for similarly situated persons. The Petitioner would not be subject to such a penalty today without the outdated guidelines calculation that was applied at his initial sentencing. Petitioner humbly ask this Honorable Court to kindly appoint Counsel so that these issues may first be better articulated to the Court to convey the proper message that the Petitioner is attempting to assert, secondly, Petitioner ask in the alternative that the Court review the standing PSR through the Probation department to determine if the Petitioner in fact would be sentenced under a new guideline range considering a variance that can now be taken into consideration based on Amendment 821 4A1.3, and thirdly in the event that the guidelines are effected by the adjustment of a variance to the criminal history score then Petitioner would ask the Court under the 3553(a) to also consider the variance applicable to the now existing meth-mixture-guidlines.

Therefore, the Petitioner humbly ask for an alterantive sentence to the one he is currently serving. The Court has discretion to alter the present sentence and re-sentence Petitioner in light of the above stated circumstance and conditions. The Petitioner is making this request with a clear and clean heart not out of a sense of entitlement, but from a position of humility and heartfelt desire to reintergrate as a productive and respectable member of the community.

At present the Petitioner is asking this Honorable Court to resentence the Petitioner to the now relevant mandatory minimum which has been lowered from 120 months to 108 months under the new interpretation of the law. This request is based on the Ruling in tne Joseph Joshua Borick Case, at 4:20-CR-00016-5. In addition my initial

criminal history was over stated by my four 1 point marijuana and marijuana paraphanalia tickets which were non-jailable offenses within the state. The Petitioner is asking this Court to consider these factors when resentencing the Petitioner.

If a new sentence is handed down the Petitioner ask that the Courts also calculate into the decision the benefit that Petitioner originally received for his successful completion of drug treatment while on pre-trial release.

Respectfully Submitted,

*J. Maynard*
Mr. James Maynard

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEBRASKA

JAMES MAYNARD,
PETITIONER,

CASE NO: 8:18-CR-215

v.

Judge: John M. Gerrard

UNITED STATES OF AMERICA,
RESPONDENT.
_____/

## DECLARATION OF INMATE FILING

I am an inmate confined in an institution. Today, 05/24/2024, I am depositing the Motion for Compassionate Release and Reduction in Sentence pursuant to Amendment 821 4A1.3, in this case in the institution's internal mail system. First Class postage is being prepaid by me.

I declare under penalty of perjury that the foregoing is true and correct (see 28 U.S.C §1746).

_J. Maynard_
Signature

James A. Maynard
Name (printed)

6-13-2024
Signed on (insert date)

Reg. No. 30726-047
F.C.I. Berlin
P.O. BOX 9000
Berlin, NH 03570

# Certificate of Completion

Presented to

## James Maynard 30726-047

For successfully completing the

### Drug Abuse Education Course

The Drug Abuse Education Course is a minimum of 12 hours. The goal of this program is to help the offender to make an accurate evaluation of the consequences of his/her alcohol/drug use and consider the need for treatment.

_____                                          3/4/2024
**Drug Abuse Treatment Specialist**                                  **Date**

**FCI Berlin**

